USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/21/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
UNITED STATES OF AMERICA,                  :
                                                                        :          08-CR-1026 (VEC)
                          -against-                            :
                                                                        :          OPINION AND ORDER
JEFFREY CORREA,                                        :
                                                                        :
                                        Defendant.        :
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

      Defendant Jeffrey Correa moves for compassionate release based on several medical

conditions that elevate his risk of serious and potentially fatal complications should he contract

COVID-19.  The Government opposes Mr. Correa's motion, arguing both that he has failed to

establish extraordinary and compelling reasons justifying his release and that such a sentence

reduction would not be consistent with the factors set forth in 18 U.S.C. § 3553(a).  Considering

the real and considerable risks to Mr. Correa's health, the Court finds that a reduction of Mr.

Correa's federal sentence is warranted.  The Court does so with the knowledge that Mr. Correa

will not be released into the community but will be released to New York State custody, where

he will serve out the remaining term of his concurrent state sentence for conduct related to his

federal offense.  In the Court's assessment — without minimizing his federal offense in the

slightest — Mr. Correa's state crime constitutes the most heinous of his criminal conduct;

releasing him to New York State custody, therefore, acknowledges Mr. Correa's significant

medical considerations while permitting New York State, which prosecuted that offense, to

determine whether Mr. Correa should be released to the community.  Accordingly, Mr. Correa's

motion for compassionate release is GRANTED.

## BACKGROUND

On July 29, 2008, Mr. Correa was arrested by the New York City Police Department ("NYPD") after his co-Defendant, Mr. Rondelle Trinidad, was arrested and made several inculpatory statements to the NYPD concerning his and Mr. Correa's conduct.  *See* Presentence Report ("PSR") ¶¶ 7–12.  Some time in August 2007, Mr. Correa invited Mr. Trinidad to his home, where both engaged in sexual conduct with Mr. Correa's ten-year-old nephew.  *See id.* ¶¶ 8–9.  On that same day, Mr. Correa invited two other adult males to his home, both of whom also engaged in sexual conduct with the minor victim.  *Id.* ¶ 10.  Mr. Trinidad and the minor victim both reported that Mr. Correa had made the victim a "milkshake" that was intended to make the victim "sleepy," and the victim reported that the milkshake tasted "mediciney."  *See id.* ¶ 13. Mr. Trinidad and Mr. Correa took several photographs of the sexual abuse; at Mr. Correa's request, Mr. Trinidad later emailed several of the photographs to Mr. Correa.  *Id.* ¶ 11. Interviews with the minor victim revealed that Mr. Correa had engaged in sexual conduct with him on at least two separate occasions.  *Id.*

On August 28, 2008, Mr. Correa and Mr. Trinidad were named in a 37-count indictment in Bronx County Supreme Court that charged them with sexually assaulting the minor victim between November 1, 2007, through January 31, 2008.  *Id.* ¶ 15.  In September 2008, Mr. Correa and Mr. Trinidad were charged by complaint with production of child pornography and transferred to federal custody.  *See id.* at 1; Gov't Opp. at 2, Dkt. 81.  They were indicted federally on October 24, 2008, and charged with engaging in sexually explicit acts with a minor for the purpose of photographing those acts, in violation of 18 U.S.C. § 2251(a).  PSR ¶ 1.  On February 9, 2009, Mr. Correa pleaded guilty to production of child pornography, in violation of 18 U.S.C. § 2251.  *Id.* ¶ 2.

Based on several factors relevant to Mr. Correa's offense conduct, the Probation Department calculated Mr. Correa's total offense level at 37 and his criminal history category at I, for a Guidelines range of 210 to 262 months. *See id.* ¶¶ 21–31, 34, 74.[1] Probation ultimately recommended a sentence of 262 months' imprisonment followed by a five-year period of supervised release. *Id.* at 18, 20. On March 29, 2010, Judge Harold Baer Jr. sentenced Mr. Correa to 180 months' imprisonment, the mandatory minimum, followed by a five-year term of supervised release, and ordered that his federal sentence run concurrently with his pending New York State sentence. Judgment, Dkt. 45. In sentencing Mr. Correa, Judge Baer relied on the defense expert's opinion that Mr. Correa's problems were "'overcomeable' with 'counseling and therapy,' and that he pose[d] no risk of reoffending," as well as Mr. Correa's own history of abuse and his abstention from prior criminal conduct. Gov't Opp. at 2 (quoting Sentencing Tr. at 4:23–5:7, Dkt. 46). Importantly, Judge Baer recommended that Mr. Correa be "incarcerated at Ft. Devens, Massachusetts or a similar institution devoted to sex offenders where he will receive the appropriate treatment and therapy." Judgment at 2. Mr. Correa then pled guilty in New York State court to two counts of committing a criminal sexual act in the first degree in violation of N.Y. Penal Law § 130.50(4). Gov't Opp. at 2–3. In September 2010, Mr. Correa was sentenced in New York State court to a 20-year term of imprisonment followed by 10 years of supervised release. *Id.* at 3.

On or around May 17, 2020, Mr. Correa submitted a request for compassionate release to the Bureau of Prisons ("BOP"), citing his medical conditions and the ongoing COVID-19

---

[1] At the time of the instant offense, Mr. Correa had no prior criminal convictions, but, in addition to the pending state charges for the same conduct underlying his federal offense, Mr. Correa also had pending New York State charges for possession of an obscene sexual performance by a child and possession of a sexual performance by a child. *See* PSR ¶¶ 33–38. On that charge, Mr. Correa ultimately pled guilty to possession of an obscene sexual performance by a child less than 16-years-old in violation of N.Y. Penal Law § 263.11 and was sentenced to an indeterminate term of 16 months' to four years' imprisonment. Gov't Opp. at 2 n.1.

pandemic.  *See* Gov't Opp. at 3, 5 n.4.  Shortly thereafter, the Warden of FCI Danbury denied

Mr. Correa's request, noting that Mr. Correa's treatment plans were effective and his medical

condition stable.  *Id.* at 3.  BOP also rejected Mr. Correa's request for home confinement under

the CARES Act, finding him ineligible because he was convicted of a sex crime and because he

had a detainer lodged against him, among other reasons.  *Id.*  Having exhausted his

administrative remedies, on July 23, 2020, Mr. Correa requested the appointment of counsel to

file a motion for compassionate release on his behalf.  *See* Dkt. 69.  Shortly thereafter, the case

was reassigned to the undersigned, *see* Dkt. 71, who appointed counsel to represent Mr. Correa

for purposes of a motion for compassionate release.  *See* Dkt. 70.  On September 15, 2020, Mr.

Correa's counsel filed on his behalf a motion for compassionate release pursuant to 18 U.S.C. §

3582(c)(1)(A).  *See* Def. Mot., Dkt. 78.

     In opposing Mr. Correa's motion, the Government argues that Mr. Correa's medical

conditions do not leave him unable to provide self-care and do not place him at greater risk for

complications were he to contract COVID-19.  *See* Gov't Opp. at 5–7.  The Government further

argues that a sentence reduction would undermine the goals of sentencing as set forth in 18

U.S.C. § 3553(a).  *See id.* at 7–8.  After replying in further support of Mr. Correa's motion,

counsel for Mr. Correa filed two supplementary letters arguing that his health and other

circumstances warrant a sentence reduction.  *See* Dkt. 85; Dkt. 87.

## DISCUSSION

### I.    Compassionate Release Standard

     Pursuant to 18 U.S.C. § 3582(c)(1)(A), a court is authorized to modify a previously

imposed term of imprisonment in only very limited circumstances.  From its original enactment

in 1984 until 2018, this provision provided BOP with "exclusive power over all avenues of

compassionate release."  *United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020).  As

amended by the First Step Act of 2018 ("FSA"), however, § 3582(c)(1)(A) now permits a

defendant to bring a motion for compassionate release on his own behalf, after he "has fully

exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion

on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden

of the defendant's facility."  18 U.S.C. § 3582(c)(1)(A); *United States v. Fisher*, No. 83-CR-150,

2020 WL 5992340, at *3 (S.D.N.Y. Oct. 9, 2020).

Today, assuming a defendant has satisfied the exhaustion requirement, the court "may

reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to

the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons

warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A).  While § 3582(c)(1)(A) also requires that

any sentence reduction be "consistent with applicable policy statements issued by the Sentencing

Commission," the Second Circuit recently held that the FSA rendered U.S. Sentencing

Guidelines Manual § 1B1.13 Application Note 1(D) inapplicable to compassionate release

motions brought directly by a defendant.  *See Brooker*, 976 F.3d at 230; *see also id.* at 238 n.5

(finding that a court considering a motion for compassionate release brought by a defendant need

not consider BOP's guidance concerning what constitutes an extraordinary and compelling

reason).  "The amendment of the compassionate release statute by the FSA 'freed district courts

to consider the full slate of extraordinary and compelling reasons that an imprisoned person

might bring before them' when seeking a sentence reduction."  *Fisher*, 2020 WL 5992340, at *3

(quoting *Brooker*, 976 F.3d at 237).

## II.       Extraordinary and Compelling Reasons

In support of his motion, Mr. Correa contends that the ongoing COVID-19 pandemic, the conditions at FCI Danbury, and his multiple, serious medical conditions all demonstrate extraordinary and compelling circumstances justifying his early release, especially when considered in conjunction with the fact that he is scheduled to be released from federal custody in a mere six months.  *See* Def. Mot. at 6–16.  In response, the Government, relying on Sentencing Guidelines § 1B1.13 Application Note 1(D), argues that Mr. Correa does not have any condition that substantially diminishes his ability to provide self-care while incarcerated, further arguing that none of Mr. Correa's medical conditions actually places him at greater risk were he to contract COVID-19.  *See* Gov't Opp. at 5–6.  The Government also contends that FCI Danbury, where Mr. Correa is housed, has limited the spread of COVID-19 and is well-positioned to determine those inmates that warrant a transfer to home confinement.  *Id.* at 6.

As an initial matter, the timing of the parties' relevant submissions is noteworthy in assessing their respective arguments concerning whether Mr. Correa has demonstrated extraordinary and compelling reasons justifying release.  In the early months of the COVID-19 pandemic, many district courts considered themselves bound by the Sentencing Commission's or BOP's guidance when evaluating motions for compassionate release.  The Second Circuit recently made abundantly clear, however, that district courts have near-absolute discretion in determining what constitutes an extraordinary and compelling circumstance warranting relief when deciding motions for compassionate release brought directly by a defendant.  *See Brooker*, 976 F.3d at 237; *United States v. Vargas*, No. 88-CR-325, 2020 WL 6886646, at *4 (Nov. 24, 2020) ("Evaluating the instant motion post-*Brooker*, this Court is not bound by BOP's determination of what constitutes extraordinary or compelling circumstances; instead, this Court

can exercise its broad discretion to consider any factor or collection of factors it deems relevant.").

Mr. Correa's counsel filed the instant motion on September 15, 2020, less than two weeks before the Second Circuit decided *Brooker*; as a result, counsel strained to cram Mr. Correa's situation into the narrow contours of Sentencing Guidelines § 1B1.13 Application Note 1(D). *See* Def. Mot. at 14–15. The Government, on the other hand, submitted its opposition on October 5, 2020, nearly two weeks *after* the Second Circuit decided *Brooker*. *See* Gov't Opp. at 1. The Government's arguments in reliance on Sentencing Commission policy statements and BOP guidance are, now, of no moment; the Court is free to decide for itself whether Mr. Correa's medical conditions constitute extraordinary and compelling reasons warranting release, regardless of whether his conditions diminish his ability "to provide self-care within the environment of a correctional facility." *Id.* at 5 (quoting U.S.S.G. § 1B1.13 app. note 1). The Court does, however, consider the Government's opposition to Mr. Correa's motion on the merits.

After reviewing Mr. Correa's medical records and the arguments proffered by the parties, the Court concludes that, based on the confluence of his medical concerns and an ongoing outbreak of COVID-19 at his facility, Mr. Correa has satisfied his burden of demonstrating extraordinary and compelling reasons justifying an early release. Mr. Correa's litany of medical issues includes two chronic conditions, HIV and asthma; he is also significantly overweight, has suffered from "painful rash, pustules and lesions" since at least March 2020, and has chronic lower back pain. *See* Def. Mot. at 2–3; Def. Reply at 4, Dkt. 84; Medical Records.[2] Mr. Correa

---

[2]     There is seemingly some disagreement between the parties concerning whether Mr. Correa has sickle-cell disease or sickle-cell trait. *Compare* Def. Mot. at 14 *with* Gov't Opp. at 6 & n.6. Mr. Correa's medical records reveal that BOP medical staff has varied between saying he has "sickle-cell trait" and "sickle-cell anemia," both of which may be distinct from sickle-cell disease. *See* Medical Records. Nevertheless, because Mr. Correa's other

has had asthma since childhood and has long used an inhaler to control it.  PSR ¶ 52; Medical

Records.  Although medical records from 2015 indicate that he was "doing well with the rescue

inhaler," according to counsel's most recent letter, Mr. Correa's asthma has since worsened, as

his rescue inhaler is no longer sufficient to control his asthma.  *See* Medical Records; Nov. 24,

2020 Suppl. Ltr. at 2, Dkt. 87.  As a result, he was recently prescribed a steroid to help control

his asthma symptoms.  *See* Nov. 24, 2020 Suppl. Ltr. at 2.  Mr. Correa has had HIV since 2003,

although his medical records reveal that his medicine regiment has largely kept his HIV in

control.  *See* PSR ¶ 54; Medical Records.  Finally, according to his BMI, as calculated using his

height and weight measurements, Mr. Correa vacillates between being very overweight and

being obese.  *See* Gov't Opp. at 6 (noting that Mr. Correa's BMI has fluctuated between 29.3 and

31.4); *see also* Medical Records.

 The Government's argument that Mr. Correa "has no medical conditions placing him at

greater risk for complications were he to be infected by COVID-19" is not only incorrect, it

presumes a level of certainty and understanding that the medical community does not have.

Gov't Opp. at 5.  According to the Centers for Disease Control ("CDC"), each of Mr. Correa's

chronic conditions either leaves him at increased risk of severe illness from COVID-19 or, at

minimum, might put him at increased risk for severe illness from COVID-19.  *See People with*

*Certain Medical Conditions*, Ctrs. for Disease Control and Prevention (Dec. 1, 2020),

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

conditions.html (listing obesity as a condition that places an adult at "increased risk of severe

illness" from COVID-19 and listing "[a]sthma (moderate-to-severe), "[i]mmunocompromised

state (weakened immune system) from . . . HIV," and "[o]verweight" as conditions that might

---

medical conditions, considered in the context of the COVID-19 pandemic, are sufficient to demonstrate
extraordinary and compelling circumstances, the Court need not concern itself with this dispute.

place an adult at increased risk for severe illness from COVID-19).  Certain studies have gone

further in classifying asthma as a significant comorbidity increasing one's risk of severe illness

from COVID-19.  *See, e.g.*, Zhaozhong Zhu et al., *Association of Asthma and Its Genetic

Predisposition with the Risk of Severe COVID-19*, 146 J. Allergy & Clinical Immunology 327

(2020) ("In conclusion, the large population-based cohort study demonstrated that adults with

asthma had a higher risk of severe COVID-19, which was driven by the increased risk in patients

with nonallergic asthma.").  Similarly, while the risk of severe illness from COVID-19 appears

to be most pronounced in HIV-positive individuals with a low CD4 cell count and those not on

effective HIV treatment, *see COVID-19 and HIV*, Ctrs. for Disease Control and Prevention,

https://www.cdc.gov/hiv/basics/covid-19.html (last visited Dec. 16, 2020), the data is still

inconclusive, with at least some research revealing that HIV-positive individuals are at

significantly increased risk of severe illness or death from COVID-19.  *See, e.g.*, Krishnan

Baskaran et al., *HIV Infection and COVID-19 Death: A Population-Based Cohort Analysis of

UK Primary Care Data and Linked National Death Registrations Within the OpenSAFELY

Platform*, Lancet, Dec. 11, 2020, at 5, https://doi.org/10.1016/S2352-3018(20)30305-2 ("In this

large population-based study using data from the OpenSAFELY platform in England, we found

people with HIV to be at more than twice the risk of COVID-19 death compared with people

without HIV, after accounting for demographic characteristics and lifestyle-associated factors.").

This Court, then, has little hesitancy in joining a number of other courts in finding that

Mr. Correa's medical conditions rise to the level of extraordinary and compelling reasons

justifying compassionate release.  *See, e.g.*, *United States v. West*, No. 18-CR-45, 2020 WL

6150932, at *6–7 (D. Md. Oct. 20, 2020) (granting compassionate release to defendant with

HIV, hypertension, obesity, and prediabetes); *Bruno v. United States*, No. 17-CR-72, 2020 WL

4192282, at *3 (E.D. Va. July 16, 2020) ("[Notwithstanding Petitioner's HIV treatment and healthy CD4 cell count], the Court does not discount the threat the pandemic poses to Petitioner, as the effects of COVID-19 on HIV-positive individuals are still not fully understood. Further, the symptomatic overlap between the opportunistic infections that can be deadly for HIV-positive individuals and COVID-19 is unmistakable."); *United States v. Park*, 456 F. Supp. 3d 557, 561 (S.D.N.Y. 2020) (granting compassionate release to defendant with asthma and immune-compromising diseases); *United States v. Williams*, 456 F. Supp. 3d 414, 417 (D. Conn. 2020) (finding defendant's asthma, hypertension, and diabetes constituted extraordinary and compelling reasons justifying release).

The significant outbreak at FCI Danbury, where, as of December 16, 2020, 97 inmates are currently infected with COVID-19, only further bolsters the Court's conclusion. *See COVID-19: Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 16, 2020). As Mr. Correa's counsel highlights, FCI Danbury has had many cases among inmates and staff, and at least one inmate death, spanning multiple distinct outbreaks. *See* Def. Mot. at 8–13. Although the Court is confident that BOP is making efforts to control the spread of the disease, those efforts are insufficient to keep the virus at bay.[3] The Court therefore finds that Mr. Correa has demonstrated extraordinary and compelling reasons for his sentence to be reduced, assuming such relief would be consistent with the section 3553(a) sentencing factors.

---

[3]       As the Court has previously observed, *see, e.g.*, *United States v. Rodriguez*, No. 17-CR-157, 2020 WL 3051443, at *2–3 (S.D.N.Y. June 8, 2020), there are other steps that BOP could take that would reduce the likelihood of spread within the prisons. Highest on the list of steps it could take, but does not appear to be taking even as COVID-19 is spreading wildly, is frequent testing of corrections officers and other BOP staff who can unwittingly transmit COVID-19 from the community to prisoners detained in BOP facilities.

III.     **Section 3553(a) Factors**

Although the Court is untroubled finding that Mr. Correa has established extraordinary

and compelling circumstances warranting a sentence reduction, it is a closer call whether such a

remedy is appropriate in light of the section 3553(a) sentencing factors.  *See* 18 U.S.C. §

3582(c)(1)(A).  The Government contends that Mr. Correa's conduct was "remarkably serious,"

that Mr. Correa already received a sentence well-below the Guidelines recommendation, and that

Mr. Correa has not shown that his release would not endanger the public (he received no

treatment as a sex offender while incarcerated).  *See* Gov't Opp. at 7–8.  While Mr. Correa

contends that the section 3553(a) factors weigh in favor of his outright release to the community,

he also stresses that the Court's grant of compassionate release will do nothing more than release

him to New York State custody and permit him to seek parole on the remaining portion of his

20-year state sentence.[4]  *See* Def. Mot. at 16–19; Def. Reply at 4; Nov. 24, 2020 Suppl. Ltr. at 3–

4.  It is this qualification, combined with the fact that Mr. Correa has only six months remaining

until the date of his scheduled release from federal custody, that allows the Court to find that

reducing Mr. Correa's federal sentence would be consistent with the section 3553(a) factors.

There can be no minimizing the seriousness of Mr. Correa's underlying offense conduct.

Mr. Correa's conduct was heinous, made only worse by the fact that it was directed toward a

---

[4]        The Court notes that Mr. Correa has a strong reentry plan, pursuant to which he intends to live with his parents, and that Probation has already conducted a home visit and approved his living arrangement.  Def. Reply at 1 n.1.  That Mr. Correa's family continues to support him and will welcome him into their home upon his release would normally tend to support a finding that Mr. Correa would be less likely to recidivate upon release.  Here, however, because the Court is granting Mr. Correa's motion on the understanding that he will be transferred to New York State custody immediately upon his release from FCI Danbury, Mr. Correa's plans for his ultimate release from custody, whether federal or state, are largely irrelevant to the Court's present decision.

        In her most recent supplementary letter in support of Mr. Correa's motion, counsel also points to the Second Circuit's decision in *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010), as an additional reason for the Court to find that the section 3553(a) factors favor early release.  The Court does not see how *Dorvee* affects its analysis.  Mr. Correa received a sentence equivalent to the mandatory minimum for convictions pursuant to 18 U.S.C. § 2251.  Therefore, the defense is incorrect in asserting that, in light of *Dorvee*, "Mr. Correa likely already has served the sentence that would be imposed if he were sentenced today."  *See* Nov. 24, 2020 Suppl. Ltr. at 3.

prepubescent member of his own family, for whom Mr. Correa was supposed to be caring.  The

Court does not believe, however, that reducing Mr. Correa's federal sentence on the child

pornography conviction by six months, leaving intact and releasing Mr. Correa to serve out — or

receive parole on, as the relevant New York State authorities see fit — the remaining term of his

state sentence for sexual abuse of a minor, undermines the need to reflect the seriousness of his

conduct.  Judge Baer viewed a mandatory minimum sentence as lengthy enough to satisfy the

goals of sentencing, especially considering Mr. Correa's own history of being sexually abused

and an expert's opinion that Mr. Correa was unlikely to reoffend.  Sentencing Tr. at 4:23–5:7.  It

is not the province of this Court to second-guess Judge Baer's original sentence.  *See United*

*States v. Ebbers*, 432 F. Supp. 3d 421, 429 (S.D.N.Y. 2020) (explaining that compassionate

release is "not an opportunity to second guess or to reconsider whether the original sentence was

just").  Further, the Court believes that the extremely harsh conditions of confinement to which

Mr. Correa has been subjected over the past nine months renders a minimal reduction below that

mandatory minimum warranted and just.  *See, e.g.*, *United States v. Rodriguez*, No. 00-CR-761,

2020 WL 5810161, at *3 (S.D.N.Y. Sept. 30, 2020) ("[T]he risk of suffering severe health

consequences if [defendant] contracts COVID-19, coupled to the severe conditions imposed by

the concomitant lockdowns and restrictions that are necessary to ensure [defendant's] safety,

means that 'the actual severity of [defendant's] sentence as a result of the COVID-19 outbreak

exceeds what the Court anticipated at the time of sentencing.'" (quoting *United States v. Mel*,

No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020))).

The "history and characteristics of the defendant" and the "need . . . to provide the

defendant with needed . . . medical care" are both factors that now weigh heavily in favor of

reducing Mr. Correa's sentence, considering his numerous health issues and the ongoing risk of

COVID-19.  *See* 18 U.S.C. § 3553(a); *see also United States v. Pena*, 459 F. Supp. 3d 544, 550 (S.D.N.Y. 2020).  While Judge Baer considered Mr. Correa's existing medical conditions at the time of his sentencing, *see* PSR ¶¶ 52–55, no one could have foreseen the interrelation of those health issues with an international pandemic that places individuals like Mr. Correa at heightened risk.  And, as discussed at greater length below, contrary to Judge Baer's explicit recommendation, Mr. Correa has not been housed at a facility such as Devens Federal Medical Center that could provide him with needed sexual offender treatment and therapy.  While the passage of time and the opportunity to reflect on his actions are likely to have had some effect on Mr. Correa, there is no doubt that his need for treatment is still significant.  Having failed to provide him with treatment throughout his lengthy incarceration, however, there is little reason to believe that the Government would do so during his remaining six months in custody, even if we were not in the throes of an ongoing pandemic.

In looking to the other section 3553(a) factors, there is little reason to believe that a six-month reduction on a 15-year sentence will do anything to undermine the goals of general and specific deterrence.  *See Pena*, 459 F. Supp. 3d at 551 ("Mr. Pena has now served more than two-thirds of his sentence . . . .  The time he has served in prison has already achieved much of the original sentence's retributive, deterrent, and incapacitative purpose.").  Mr. Correa's nearly spotless disciplinary record, absent a minor violation for being in an unauthorized area ten years ago, further supports this conclusion.  *See* Disc. Records, Dkt. 81.

The last factor to consider is the need to protect the public from further crimes of the defendant.  18 U.S.C. § 3553(a)(2)(D).  As the defense concedes, Mr. Correa has received little to no counseling or rehabilitative treatment as a sex offender during his more than 12 years of incarceration.  *See* Def. Mot. at 4 n.4 ("Unfortunately, Mr. Correa was never sent to Devens and

seems to have gotten very little treatment during his years in prison."). While it is not Mr.

Correa's fault that BOP failed to designate him to a facility such as Devens Federal Medical

Center, the fact that Mr. Correa has not received such treatment makes it difficult for the Court to

find that he poses no risk to the community upon his release.[5] As the defense's expert stated at

the time of Mr. Correa's original sentencing, his problems were "overcomeable" *with*

*"counseling and therapy.*" Sentencing Tr. at 4:23–5:7. Unfortunately, Mr. Correa appears to

have received minimal if any counseling and therapy in the intervening years.

But as Mr. Correa states repeatedly, granting his motion will not release him into the

community; instead, he will be released immediately to the custody of the State of New York.

Thus, Mr. Correa's motion is best understood as a request to "shorten his federal sentence by

[six] months so that he can go to state custody and start the process to [potentially] get paroled

from his state sentence of 20 years." Def. Mot. at 16. Considered in this context, the Court

agrees with Mr. Correa that reducing his federal sentence by six months does not undermine the

need to protect the public from the possibility of Mr. Correa's further criminal conduct.

By reducing his sentence, the Court defers the issue of whether Mr. Correa is likely to

reoffend to New York State parole officials, who will, regardless of whether this Court grants or

denies Mr. Correa's motion for compassionate release, make the ultimate decision whether and

when Mr. Correa is ready to reenter society. During the process of seeking parole, Mr. Correa

will have to convince the parole board that he will not commit further crimes. Considering the

relative seriousness of his state and federal offenses, this will allow those responsible for having

---

[5]     A report recently published by the Department of Justice found high variability among studies looking at the rate of recidivism of child molesters. One study, however, found that 23% of child molesters who molested boys reoffended within five years. *See* Roger Przybylski, *Chapter 5: Recidivism of Adult Sexual Offenders*, SMART, https://smart.ojp.gov/somapi/chapter-5-adult-sex-offender-recidivism (last visited Dec. 18, 2020). Interestingly, that same study found that child molesters who committed incest reoffend at a much lower rate. Whether that study's definition of incest would reach sexual contact with a nephew is unknown.

prosecuted Mr. Correa's most troubling criminal conduct to make the ultimate determination concerning his likelihood to recidivate.  The Court also hopes that its decision will get Mr. Correa closer to receiving the therapy and rehabilitative services he should have received upon entering federal custody.

### CONCLUSION

For the foregoing reasons, Mr. Correa's motion for compassionate release is GRANTED. Mr. Correa's term of incarceration is reduced to time served plus not more than 14 days during which the Court understands he will be quarantined and tested for COVID-19.  Mr. Correa's original five-year term of supervised release will begin upon his release from imprisonment.  The Government and FCI Danbury are directed to coordinate with the New York State authorities to facilitate Mr. Correa's prompt transfer to state custody upon the conclusion of his period of quarantine in federal custody.

**SO ORDERED.**

**Dated: December 21, 2020**
       **New York, NY**

**VALERIE CAPRONI**
**United States District Judge**